UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD K. DUNCAN, et al.,** | } |
| **Plaintiffs,** | } |
| v. | } Case No.: 2:15-CV-1792-RDP |
| **MGC MORTGAGE, INC., et al.,** | } |
| **Defendants.** | } |

## MEMORANDUM OPINION

This matter is before the court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. (Doc. # 16). The Motion has been fully briefed. (Docs. # 18 and 19).

**I.    Background**

On January 6, 1998, Plaintiffs borrowed money from Appleton Mortgage Corporation to finance the purchase of a home. (Doc. # 11 ¶¶ 10, 13). At that time, Plaintiffs executed a promissory note in favor of Appleton in the amount of $103,000.00. (Doc. # 11 ¶¶ 13-14; Doc. # 16-1 pp. 1-6). The Note was secured by a mortgage granting to Appleton a first priority security interest in the Property. (Doc. # 11 ¶ 13; Doc. # 16-1 pp, 8-13). The same day the Loan was originated, the Mortgage, together with the Note and Indebtedness secured by the Mortgage, was assigned to New South Federal Savings Bank. (Doc. # 11 ¶ 18; Doc. # 16-1 at 15). The Note also contains an endorsement from Appleton to New South. (Doc. # 16-1 at 3).

The Loan Documents were eventually assigned ultimately to LPP. (Doc. # 11 ¶¶ 16, 18, 19; Doc. # 16-1). Plaintiffs' Loan is serviced by MGC Mortgage, Inc., a corporate affiliate of LPP. (Doc. # 11 ¶¶ 18, 24). Plaintiffs had difficulty making their monthly mortgage payments and asked to be evaluated for loss mitigation options. (Doc. # 11 ¶ 24).

On February 12, 2015, Plaintiffs were offered a loan modification. (Doc. # 11 ¶ 29). In order to accept the loan modification, Plaintiffs were required to execute a Closing Instruction Letter and a Loan Modification Agreement, and return both of those documents within 14 days to MGC, together with a $6000.00 down payment and a first modified mortgage payment of $1,046.70. (Doc. # 11 ¶¶ 29, 31; Doc. # 16-1 p. 25).

Plaintiffs signed and returned the Loan Modification Agreement, but failed to execute the Closing Instruction Letter setting out the conditions for acceptance of the loan modification, and also failed to remit the required $6000.00 down payment. (Doc. # 11 ¶¶ 31, 34). Furthermore, the first payment, which was due on March 1, 2015, was not received until March 23, 2015. (Doc. # 16-1 at 40).

On March 30, 2015, MGC wrote Plaintiffs a letter advising that they were no longer eligible for the loan modification offered to them because "they did not accept the offer for a foreclosure alternative within the required time frame." (Doc. # 11 ¶¶ 42, 46; Doc. # 16-1 pp. 27-28). On May 19, 2015, Plaintiffs were notified that the Loan had been accelerated to maturity and the Property would be sold at foreclosure on June 22, 2015. (Doc. # 11 ¶ 50; Doc. # 16-1 pp. 30-32).

On or about June 18, 2015, Plaintiffs, through their counsel, wrote a letter to MGC pursuant to 12 C.F.R. § 1024.35 of Regulation X asserting that MGC committed an error by failing to implement and honor the Loan Modification Agreement. (Doc. # 11 ¶¶ 51-52; Doc. # 16-1 pp. 35-36). MGC timely acknowledged receipt of the Notice of Error and cancelled the June 22, 2015 foreclosure sale so that it could fully investigate the claims raised in Plaintiffs' Notice of Error. (Doc. # 11 ¶ 54).

On July 16, 2015, MGC timely and fully responded Plaintiffs' Notice of Error by explaining that the loan modification was not implemented because Plaintiffs did not accept MGC's loan modification offer by signing the Closing Instruction Letter and remitting a $6000.00 down payment, nor did they make their first modified payment of $1046.70 by the March 1, 2015 deadline. (Doc. # 16-1 pp. 40-41).

A few days later, on July 22, 2015, Plaintiffs were again notified that the Loan had been accelerated to maturity and the Property would be sold at foreclosure on September 4, 2015. (Doc. # 11 ¶¶ 56, 60; Doc. # 16-1 pp. 96-98).

The day before the scheduled foreclosure sale, Plaintiffs initiated this lawsuit. (Doc. # 1-1).

## II.     Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Intl. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim.  *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. Appx. 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)).  That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Twombly*, 550 U.S. at 556.  Further, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682).  If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 556.

## III.   Discussion

Defendants have moved to dismiss all eight of the claims asserted in Plaintiffs' Complaint.  For the reasons set forth below, Defendants' Motion is due to be granted as to all counts.

4

### A.     Count One - Negligence/Wantonness

In Count One of their Amended Complaint, Plaintiffs' claim that MGC negligently and/or wantonly failed to "properly book the modification agreement which would have brought the loan current." (Doc. # 11 ¶¶ 85-102). Plaintiffs further allege that Defendants failed to "[e]valuate the borrower for all loss mitigation options available to the borrower" and "[p]rovide the borrower with a notice in writing stating . . . which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage" under 12 C.F.R. § 1024.41(b)-(j). This count actually asserts two different claims.

"The elements of a negligence claim are a duty, a breach of that duty, causation, and damage." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So.2d 665, 679 (Ala. 2001). Wantonness is not just a higher level of negligence, but involves "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (emphasis in original).

Plaintiffs' negligence and wantonness claims fail as a matter of law based on the allegations of Plaintiffs' Amended Complaint. The allegations of the Amended Complaint establish that Defendants indeed fulfilled their obligations to evaluate Plaintiffs for a modification, and in fact offered Plaintiffs a modification, but Plaintiffs failed to fulfill the requirements to properly accept that modification. In their Amended Complaint, Plaintiffs have identified no legal duty with which Defendants failed to comply. Thus, there is no valid negligence claim here.

Moreover, "federal courts applying Alabama law have repeatedly rejected attempts to assert wantonness claims based on a lender's actions handling and servicing a mortgage once the

mortgage is executed." *U.S. Bank Nat. Ass'n v. Shepherd*, 2015 WL 7356384, at *12 (Ala. Nov. 20, 2015) (citing *James v. Nationstar Mortgage, LLC*, 92 F.Supp.3d 1190, 1198-1200 (S.D. Ala. 2015)). Therefore, Plaintiffs' negligence and wantonness claims asserted in Count One of their Amended Complaint is due to be dismissed.

> **B.     Count Two - Breach of Contractual Obligations of Good Faith and Fair Dealing**

Count II of Plaintiffs' Amended Complaint alleges that Defendants had "a contractual duty to act in good faith and to deal fairly with [them] with regard to the note and mortgage," and that Defendants breached this duty by allegedly failing to honor to the terms of the Note, Mortgage and/or Loan Modification Agreement. (Doc. # 11¶¶ 107-112).

Alabama recognizes that every contract carries an implied obligation of good faith and fair dealing, which has been defined as "an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth.*, 837 So. 2d 253, 267 (Ala. 2002) (quoting *Seller v. Head*, 261 Ala. 212, 217, 73 So.2d 747, 751 (1954)). "The parameters of this claim have not been well defined. However, it is clear that the obligation is *not actionable unless the breach of that duty can be tied to the performance of a specific term of the contract*." *Shedd v. Wells Fargo Home Mortgage, Inc.*, 2015 WL 6479537 *5 (S.D. Ala. Oct. 26, 2015) (citing *Lake Martin/Alabama Power Licensee Assoc. v. Alabama Power Co., Inc.*, 601 So. 2d 942, 945 (Ala. 1992) (emphasis added). More specifically, Alabama courts have recognized the duty of good faith and fair dealing when "the contract fails to specify all the duties and obligations intended to be assumed." *Lloyd Noland Found.*, 837 So.2d at 267. In those instances, "the law will imply an agreement to do those things that according to reason

and justice the parties should do in order to carry out the purpose for which the contract was made." *Id.*

In Count Two of their Amended Complaint, Plaintiffs set forth no factual allegations to support their conclusory contention that Defendants failed to act in good faith and deal fairly with Plaintiffs. (Doc. # 11 ¶¶ 106-112). Plaintiffs have made a bald assertion that Defendants made it impossible for Plaintiffs to perform on their mortgage contract. (Doc. # 11 ¶ 110; Doc. # 18 p.16). However, they have failed to point to any allegation that would tie their claim to any specific contractual term obligating Defendants in any way. Plaintiffs admit they were behind on their mortgage. They were offered a loan modification but, according to their own allegations, they failed to comply with the conditions necessary to accept that modification. At best, the factual allegations of Count Two merely assert that Defendants took certain actions that they were entitled to take under the contractual documents at issue. Because Plaintiffs' Amended Complaint does not allege a breach of duty related to any specific contractual term, their claim for breach of implied duty of good faith and fair dealing is due to be dismissed. *See Shedd*, 2015 WL 6479537 at *5.

### C. Count Three - Breach of Contract

In Count III of their Complaint, Plaintiffs allege that Defendants breached the parties' agreement by failing to "comply with essential terms of paragraph 2 [of the Mortgage] regarding the application of payment and the notice requirements of paragraph 21 [of the Mortgage]." (Doc. # 11 ¶ 114). Plaintiffs further allege that Defendants failed to properly apply payments and assessed improper fees and expenses. However, Plaintiffs' conclusory allegations fail to identify or describe the misapplied payments, what fees or expenses were improperly assessed, and the contractual obligations requiring Defendants to accept the payments or prohibiting them

from assessing the fees. (Doc. # 11 ¶¶ 116-118). Plaintiffs were undisputedly in default on their loan and undisputedly failed to perform the actions necessary to accept the offered loan modification. (Doc. # 11 ¶¶ 29-34).

Additionally, Plaintiffs' admitted default entitled Defendants to enforce certain rights under the Note, including charging late fees and requiring the payment of the full amount of unpaid principal. (Doc. # 16-1 at 2-3). Furthermore, although Plaintiffs have made conclusory allegations that the Notice of Acceleration was not in compliance with the terms of the Mortgage, a review of the Notice of Acceleration (Doc. # 16-1 at 30-31) reveals that all of the conditions Plaintiffs allege were violated were in fact met. The parties had previously corresponded regarding a loan modification. Plaintiffs were approved for the loan modification and were offered the loan modification, but Plaintiffs did not fulfill all of the conditions of acceptance. Plaintiffs may have intended to accept the loan modification; but did not comply with all applicable prerequisites. (Doc. # 11 ¶¶ 29-34).

Plaintiffs' Amended Complaint simply fails to identify any plausible breach by Defendants of an enforceable contractual term. Therefore, Plaintiffs' breach of contract claim is due to be dismissed.

### D.     Count Four - Violation of 12 C.F.R. § 1024.41(f)

Plaintiffs allege that Defendants violated 12 C.F.R. § 1024.41(f) by proceeding with foreclosure activities when Plaintiffs had submitted a loss mitigation application. (Doc. # 11 ¶¶ 132-141).

Title 12 C.F.R. § 1024.41(f) provides as follows:

(f) Prohibition on foreclosure referral.

(1) Pre-foreclosure review period. A servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

(i) A borrower's mortgage loan obligation is more than 120 days delinquent;

(ii) The foreclosure is based on a borrower's violation of a due-on-sale clause; or

(iii) The servicer is joining the foreclosure action of a subordinate lienholder.

(2) Application received before foreclosure referral. If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

(i) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(ii) The borrower rejects all loss mitigation options offered by the servicer; or

(iii) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41

The applicable regulation requires a servicer to accept and process one complete loss mitigation application. 12 C.F.R. § 1024.41(i) ("A servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account."). *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696-01, 10836 (Feb. 14, 2013) ("The [Consumer Financial Protection] Bureau believes that it is appropriate to limit the requirements in § 1024.41 to a review of a single complete loss mitigation application. Specifically, the Bureau believes that a limitation ... to a single complete loss mitigation application provides appropriate incentives for borrowers to submit all appropriate information in the application ....").

Although Plaintiffs allege in Count Four that "they had not rejected an offer nor failed to comply with the terms of an agreement," the allegations of their own Amended Complaint

establish that Defendants accepted and processed Plaintiffs' loss mitigation application and offered Plaintiffs a modification, but that Plaintiffs failed to comply with the instructions on how to properly accept the loan modification.  In particular, Plaintiffs were instructed to "return 2 copies" of the Modification Agreement and "return 1 copy" of the Cover page.  As to the Modification Agreement, the instructions further directed Plaintiffs to return "two signed and notarized copies to us along with a certified check or money order for the required $6,000.00 down payment and the first modified payment of $1,046.70 due for March 1, 2015 in the pre-paid envelope."  (Doc. # 11 at ¶¶ 29-35; Doc. # 16-1 at 25)).  Plaintiffs allege that they "executed the Loan Modification Agreement … [and] returned the agreement to MGS next day air via FedEx." (Doc. # 11 at ¶ 34).  Nowhere do Plaintiffs allege that they complied with the other instructions to accept the Loan Modification, including making the required payments.

Under 12 C.F.R. § 1024.41, a servicer is prohibited from proceeding with a foreclosure sale until the servicer either (a) notifies the borrower of its decision regarding loss mitigation options, (b) the borrower rejects all loss mitigation options offered, or (c) the borrower fails to perform under an agreement on a loss mitigation option. *Ramos v. Wells Fargo Bank, N.A.*, 2016 WL 233142 *4 (S.D. Fla. Jan. 13, 2016); *Lage v. Ocean Loan Servicing LLC*, 2015 WL 7294854 (S.D. Fla. Nov. 19, 2015) (citing 12 C.F.R. § 1024.41(g)).  The loan modification closing instructions required Plaintiffs to do more than return an executed copy of the Loan Modification agreement. The instructions required them to return "two signed and notarized copies to us along *with a certified check or money order for the required $6,000.00 down payment* and the first modified payment of $1,046.70 due for March 1, 2015 in the pre-paid envelope" ***within 14 days of receipt***. (Doc. # 11 at ¶¶ 29-35; Doc. # 16-1 at 25) (emphasis added).  Plaintiffs did not send the $6,000 down payment, nor did they make the first payment by March 1, 2015.  (That

payment was not received until March 23, 2015.  (Doc. # 16-1 at 40)).  By failing to comply with all of the instructions to accept the loan modification, Plaintiffs failed to accept Defendants' loan modification agreement.  At that point, Defendants had fulfilled all obligations under 12 C.F.R. § 1024.41.[1]

For all these reasons, Plaintiffs' claim alleging a violation of 12 C.F.R. § 1024.41(f) is due to be dismissed.

### E.   Count Five - Violation of 12 C.F.R. § 1024.41(c)

Title 12 C.F.R. § 1024.41(c), provides: "[i]f a servicer receives a complete loss mitigation application ... within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall: (a) [e]valuate the borrower for all loss mitigation options available to the borrower; and (b) [p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage[.]" *Ramos,* 2016 WL 233142, at *4.

Count Five of Plaintiffs' Complaint alleges that Defendants violated 12 C.F.R. § 1024.41(c) because they "wholly failed to evaluate the borrower for all loss mitigation options available and provide written notice to the borrower stating which loss mitigation options, if any, it will offer to the borrower … ."  (Doc. # 11 ¶ 149).  For reasons similar to those already addressed, however, this allegation is belied not only by the allegations of the Amended Complaint which establish that Defendants evaluated Plaintiffs for loss mitigation and offered a loan modification (Doc. # 11 ¶¶ 24 - 31), but also by the correspondence to Plaintiffs offering the

---

[1] In addition, the court questions whether Plaintiffs' claim under 12 C.F.R. § 1024.41(f) is ripe. *See Simmons v. Wells Fargo Bank, N.A.*, 2015 WL 4759441 *4 (D. N.H. Aug. 11, 2015) (citing *Wenegieme v. Bayview Loan Servicing*, 2015 WL 2151822 *2 n. 3 (S.D. N.Y. May 7, 2015)).  In *Wenegieme*, the plaintiffs asserted a claim that the defendants were liable to them for violating 12 C.F.R. § 1024.41(f).  *Wenegieme*, 2015 WL 2151822 at *2.  The court dismissed that claim on grounds that a § 1024.41(f) claim does not become ripe until the plaintiff has lost his or her property to foreclosure. *Id*; *see also* 2015 WL 4759441 at *4.

loan modification (Doc. # 16-1 at 25). Therefore, Count Five of Plaintiffs' Amended Complaint is due to be dismissed.

### F. Count Six - Violations of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 et. seq.

Plaintiffs' Amended Complaint contains two count Sixes. The first Count Six of Plaintiffs' Amended Complaint utterly fails to state a claim. (Doc. # 11 ¶¶ 153-159). That count sets forth the purpose for which 15 U.S.C. § 1692 was enacted (Doc. # 11 ¶¶ 153-155) and makes the conclusory assertion that Defendants' unspecified "acts or omissions … constitute numerous and multiple violations" of the Federal Debt Collection Practices Act ("FDCPS"). (Doc. # 11 ¶ 158). The problem here is that this Count Six is virtually devoid of any factual allegations. Pleadings that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations do not suffice to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555, 557.

Moreover, Congress enacted the FDCPA to "eliminate abusive debt collection practices by *debt collectors*. . . ." 15 U.S.C. § 1692(e) (emphasis added). The FDCPA both requires and forbids specific conduct by debt collectors. *See, e.g., id*. at §§ 1692g(a) (collector must provide thirty-day notice to dispute debt), 1692e (prohibition of use of "false, deceptive, or misleading representation or means in connection with" debt collection). To prevail on a FDCPA claim, a plaintiff must show, among other things, that (1) Defendant is a "debt collector" and (2) the challenged conduct is related to debt collection. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012).

"A debt collector is anyone whose *principal business* is the collection of debts or the enforcement of security instruments or anyone who regularly attempts to collect debts owed to another." *Saint Vil v. Perimeter Mortgage Funding Corp*., 630 F. App'x 928, 930 (11th Cir.

2015) (citing 15 U.S.C. § 1692a(6)) (emphasis added).  However, "an enforcer of a security interest, such as [a mortgage company] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)."[2]  *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 460-61 (11th Cir. 2009) (*per curiam*) (collecting cases); *accord Ausar-El ex el. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed. Appx. 1, 1 (11th Cir. 2011) (*per curiam*) ("an enforcer of a security interest only qualifies as a 'debt collector' for the purpose of § 1692f(6)"); *see also Dunavant v. Sirote & Permutt, P.C.*, 603 Fed. Appx. 737, 739-40 (11th Cir. 2015) (favorably discussing *Warren*'s holding).

Moreover, and in any event, Defendant MGC assumed the mortgage debt in approximately 2010 (Doc. # 11 ¶ 19), years before instituting foreclosure proceedings, which reasonably suggests that Defendants' business is not primarily to collect debts but rather to finance and service mortgages.  Thus, Defendants are not a "debt collectors" as that term is defined by the FDCPA.

Finally, the potential foreclosure of Plaintiffs' home is not a "debt collection" for purposes of the FDCPA.  *See Roberts v. Chase Home Fin.*, No. 12-1883, 2012 WL 2862033, at *2 (N.D. Ala. July 11, 2012) (citing *Warren*, 342 Fed. Appx. at 460-61).  "[I]f a person enforcing a security interest is not a debt collector, it likewise is reasonable to conclude that enforcement of a security instrument through the foreclosure process is not debt collection for purposes of the [FDCPA]."  *Warren*, 342 Fed. Appx. at 460.

---

[2] Section 1692f(6) does not apply here.  It prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if – (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."  15 U.S.C. § 1692f(6).  Plaintiffs have not alleged a threat to take any nonjudicial action to effect dispossession or disablement of property.

For all these reasons, the first Count Six of Plaintiffs' Amended Complaint, alleging a violation of 15 U.S.C. § 1692, is due to be dismissed.

### G.     Count Six [sic] - Violation of 12 C.F.R. § 1024.35

The second Count Six contained in Plaintiffs' Complaint asserts that, although Defendants timely responded to Plaintiffs' Notice of Error, they "failed to provide a meaningful investigation of the errors to correct the errors." (Doc. # 11 ¶¶ 162-165). Plaintiffs further allege the conduct of MGC with regard to the notices of errors "constitutes a willful violation of the applicable provisions of Regulation X." (Doc. # 11 ¶ 165). Again, however, Plaintiffs have not provided any factual detail to support these conclusory allegations. Thus, again, the allegations of this count do not suffice to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555, 557.

Moreover, Regulation X, codified at 12 C.F.R. § 1024, delineates procedures for responding to a borrower's Notice of Error. The regulations impose the following obligations upon a servicer with respect to its response to a Notice of Error:

> (e) Response to notice of error.
>
> (1) Investigation and response requirements.
>
> (i) In general[,] ... a servicer must respond to a notice of error by either:
>
> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e) (emphasis added).

> Plaintiffs' counsel's Notice of Error reported as follows:
>
> On February 22, 2015 the Duncans executed and timely returned (via FedEx) a loan modification agreement to MGC Mortgage, Inc., which modified the UPB to $79,534.02 making the first payment of $867.25 due the first day of March 2015. The March 16, 2015 statement clearly acknowledged receipt of the modification and noted "You accepted a Modification. Please refer to your documentation." In accordance with the modification, the Duncans made their March payment in the amount of $867.25. However, on March 23, 2015 MGC Mortgager, Inc. [sic] wrongfully returned the check indicating the account had been referred to Sirote for foreclosure. When the Duncans contacted Sirote they were advised the file was closed on December 26, 2014 because of the acceptance of a loan modification. Then on March 30, 2015 MGC Mortgage, Inc. wrote the Duncans wrongfully advising them the modification was denied because they did not accept the modification within the required timeframe.

(Doc. # 11 at ¶ 52; Doc. # 16-1 at 35-36).

Defendants appropriately acknowledged the Notice of Error and provided a substantive response to the Notice within thirty days. (Doc. # 16-1 at 40-94). That response indicated, as is otherwise established by the allegations of Plaintiffs' own Amended Complaint, that although Plaintiffs "were approved for a loan modification in February 2015," Defendants "did not receive the signed cover letter [] or the $6,000 required down payment," and that "the first payment, which was due on March 1, 2015, was not received until March 23, 2015." (Doc. # 16-1 at 40). Defendants fully complied with their obligations under 12 C.F.R. § 1024.35 in response to Plaintiffs' Notice of Error. Therefore, the second Count Six of Plaintiffs' Amended Complaint, alleging a violation of 12 C.F.R. § 1024.35, is due to be dismissed.

### H. Count Seven - Declaratory and Injunctive Relief

To state a valid claim for injunctive relief, a plaintiff must show: "(1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest." *Thomas v. Bryant*, 614 F.3d 1288, 1317 (11th Cir. 2010).

To establish any right to declaratory and injunctive relief, a plaintiff must establish that he has "prevailed in establishing the violation of the right asserted in his complaint." The only rights which Plaintiffs contend were violated arose in connection with other claims in Plaintiffs' Amended Complaint. For the reasons discussed above, all of those other claims are due to be dismissed. Therefore, it follows that Plaintiffs' claim for declaratory and injunctive relief is likewise due to be dismissed.

**IV.    Conclusion**

For the foregoing reasons, all of the claims in Plaintiffs' Amended Complaint are due to be dismissed. A separate order will be entered.

**DONE** and **ORDERED** this May 23, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE